UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN LAWRENCE,<br><br>                                    Plaintiff,<br><br>            -v-<br><br>THOMAS MICHAEL FLOHR,<br><br>                                    Defendant. | 23-cv-9844 (SHS) (KHP)<br><br>OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Stephen Lawrence has moved to dismiss defendant Thomas Michael Flohr's counterclaim for indemnification of attorneys' fees Flohr may incur in connection with this action. That motion is granted and the counterclaim is dismissed because the escrow agreement upon which the counterclaim is based does not provide for indemnification of Flohr's attorneys' fees in suits, such as this one, which are between the parties to that contract.

I.  BACKGROUND

In the complaint, Lawrence asserts claims against Flohr for breach of contract and breach of fiduciary duty in connection with Lawrence's purchase of the cryptocurrency Bitcoin from non-party Allyn Lloydell Brennan in December 2022. (*See* Dkt. No. 8 ("Compl.").) In short, Lawrence alleges that Flohr—the escrow agent for the transaction—improperly caused $1.195 million worth of the cryptocurrency United States Dollar Tether ("USDT") belonging to Lawrence to be released to a third party, New RiverBank LLC, and then lied to Lawrence about the transfer, all in breach of the escrow agreement between Lawrence, Brennan, and Flohr and in violation of Flohr's fiduciary duties to Lawrence as the escrow agent for the transaction. (*Id.* ¶¶ 1–2.)

After this Court denied Flohr's motion to dismiss the complaint in September 2024 (Dkt. No. 39), Flohr filed an answer essentially denying the complaint's allegations (Dkt. No. 44 ("Answer")). The Answer suggests that Flohr established a digital wallet at New RiverBank to hold the escrowed USDT and that the improper transfer of the USDT is entirely the fault of New RiverBank. (Answer ¶¶ 57–65.) In his Answer, Flohr also asserted a counterclaim against Lawrence seeking indemnification "for any damages resulting from this action." (*Id.* ¶¶ 117–21.) Flohr bases his counterclaim on Section 4.4

of the escrow agreement between Lawrence, Brennan, and Flohr, which gives Flohr authority over the escrow account and reads as follows:

> **4. Authority over the Escrow Accounts - General**
>
> . . .
>
> 4.4. The Escrow Attorney [*i.e.*, Flohr] shall take all reasonable steps to accomplish tasks under this Agreement. The Escrow Attorney shall have no liability for delays in performance hereunder in the case of unforeseen circumstances including, but not limited to regulatory requirements, or actions or restrictions imposed by the government. *The Buyer [i.e., Lawrence] and Seller [i.e., Brennan] indemnify and hold the Escrow Attorney harmless for all actions taken by the Escrow Attorney under this Agreement, excepting willful misconduct or gross negligence.*

(Dkt. No. 8-2 ("Escrow Agreement") Section 4.4 (emphasis added).)

As noted above, Lawrence has moved to dismiss the counterclaim, highlighting Section 6—the indemnification provision—of the Escrow Agreement, which reads as follows:

> **6. Indemnification**
>
> . . .
>
> 6.2. [Lawrence] and [Brennan] agree to indemnify and hold [Flohr] and his employees, directors, agents, partners, officers, and control persons (as defined in or under any applicable statute) harmless from any and all third party claims, demands, causes of actions, liabilities, damages or judgments against any such party, including the costs of defending any actions against such party, together with reasonable Escrow Attorney's fees incurred therewith, or any expenses, fees, or charges of any kind if such claims, demands, causes of action, liabilities, damages or judgments against any such party arise out of this Agreement.

(*Id.* Section 6.2.) Lawrence contends that, reading Sections 4.4 and 6.2 together, the Escrow Agreement does not provide for the indemnification of attorneys' fees and expenses in first-party claims (that is, suits between parties to the Escrow Agreement), instead providing that Lawrence and Brennan would indemnify Flohr for his attorneys' fees only in claims brought by third parties. (*See* Dkt. No. 57-4 ("Mot.") at 3, 7–9; Dkt. No. 66 ("Reply") at 1, 4.)

## II.  LEGAL STANDARD

The legal standards applicable to a motion to dismiss a complaint apply equally to a motion to dismiss a counterclaim. *See, e.g.*, *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021). To survive a motion to dismiss a counterclaim, the

2

counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss a pleading pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief," *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations marks and citation omitted), but the court need not "credit conclusory allegations or legal conclusions couched as factual . . . allegations," *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted). In so doing, the court may consider the facts stated on the face of the counterclaim as well as "any written instrument attached to the [counterclaim] as an exhibit, any statement or documents incorporated in it by reference, and any document upon which the [counterclaim] heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

The Escrow Agreement provides that it is governed by New York law. (Escrow Agreement Section 7.1.) Under New York law, when "the parties' intent is unambiguously conveyed by the plain meaning of the agreements, . . . interpretation is a matter of law." *Edwards*, 938 F.3d at 13 (quoting *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999)). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Id.* (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016)).

A contract is unambiguous "where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citation modified). "Conversely, a contract is ambiguous if the language 'is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Edwards*, 938 F.3d at 12 (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000)).

## III. ANALYSIS

As an initial matter, it is worth noting that, while Flohr's counterclaim facially seeks indemnification for "any damages resulting from this action" (Answer ¶ 121), Flohr now claims simply that he is "entitled to be indemnified for his fees and expenses" (Dkt. No. 60 ("Opp.") at 5). Flohr does not suggest that he seeks indemnification for a potential damages award in this action if it is determined that Flohr breached the Escrow Agreement—nor could he. *See AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 2d 350, 355 (S.D.N.Y. 1999) ("Contract law clearly prohibits

3

allowing [a party] to enforce an indemnification provision for losses arising from its own misconduct.").

"New York law on construing indemnity agreements is essentially hostile to claims that the agreement covers attorney fees in a suit between the contracting parties." *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 340 (S.D.N.Y. 2012) (footnote omitted). Though parties to a contract may agree to override the standard American Rule that parties are generally responsible for their own attorneys' fees, "there is a presumption against such an override . . . because of the strong policy underlying that Rule." *Id.* at 340–41. This presumption of New York contract law against interpreting an indemnification provision to cover attorneys' fees in suits between the contracting parties themselves was expressed clearly by the New York Court of Appeals in *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989). In *Hooper Associates*, a unanimous New York Court of Appeals determined that: "Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." 74 N.Y.2d at 491–92.

Though courts have found an obligation to indemnify attorneys' fees in suits between contracting parties in cases where "it is apparent that at the time of contracting the parties had no reason to anticipate the possibility of the indemnitee being faced with third-party claims," "if third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent regarding the indemnification of attorney's fees incurred in suits between them, . . . courts have refused to award such expenses as indemnification." *Luna v. Am. Airlines*, 769 F. Supp. 2d 231, 244–45 (S.D.N.Y. 2011) (collecting cases).

Here, the Escrow Agreement plainly contemplated that the escrow agent—Flohr—might be sued by third parties because Section 6.2 explicitly provides that Lawrence and Brennan were obligated to indemnify Flohr and hold him harmless "from any and all third party claims." (Escrow Agreement Section 6.2.) Nowhere in the Escrow Agreement is there a provision that the indemnification provision applies to suits between the parties to the Escrow Agreement themselves. *Cf. In re Refco*, 890 F. Supp. 2d at 341. Instead, Section 4.4 provides only that Lawrence and Brennan would hold Flohr harmless for Flohr's actions taken under the Escrow Agreement that were not willful misconduct or grossly negligent and does not mention attorneys' fees for first-party claims (in stark contrast to Section 6.2, which explicitly grants indemnification for attorneys' fees for third-party claims). Therefore, in the absence of an explicit provision in the Escrow Agreement providing for the indemnification of claims between the

4

contracting parties or any evidence that the parties contemplated indemnification of first-party claims, the Court finds that the Escrow Agreement does not provide for indemnification of attorneys' fees in first-party claims between the parties to the Escrow Agreement.

Flohr's main contention against this conclusion is to point out that New York courts have held that agreements can sometimes override the American Rule and provide for the indemnification of attorneys' fees even for first-party claims. (Opp. at 1–3.) That truism is beside the point. The issue is whether this Escrow Agreement provides for the indemnification of attorneys' fees in this scenario, not whether any contract could ever do so.

Flohr's other contention—that Section 4.4 must cover indemnification for first-party claims because otherwise it is superfluous—does not change the analysis. The Court's reading does not render Section 4.4 superfluous. Section 4.4 protects Flohr from liability to Lawrence and Brennan in first-party claims based on Flohr's actions taken under the Escrow Agreement, while Section 6.2 provides that Lawrence and Brennan will indemnify Flohr for third-party claims, including attorneys' fees. And even correctly reading Section 6.2's "such party" language to refer to Flohr and his agents, the Escrow Agreement does not clearly signal the parties' intent to depart from the rule that attorneys' fees will not be recoverable in a suit between the contracting parties.

## IV. CONCLUSION

The Escrow Agreement provides for indemnification to Flohr of attorneys' fees only for third-party claims. It does not provide for indemnification of Flohr's attorneys' fees in an action such as this one between the parties to the Escrow Agreement. For that reason, Lawrence's motion to dismiss Flohr's counterclaim seeking indemnification of attorneys' fees in this first-party claim is granted and Flohr's counterclaim is dismissed with prejudice.

Dated: New York, New York
       September 30, 2025

SO ORDERED:

*Sidney H Stein*

Sidney H. Stein, U.S.D.J.