UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN LAWRENCE,

Plaintiff,

-v-

THOMAS MICHAEL FLOHR,

Defendant.

23-cv-9844 (SHS) (KHP)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Stephen Lawrence filed a motion for summary judgment in his favor on March 19, 2026. (Dkt. No. 125.) Defendant Thomas Michael Flohr has not filed any opposition to Lawrence's motion despite having been granted extensions of his time to do so by both Magistrate Judge Katherine Parker and this Court. (*See* Dkt. Nos. 144; 148.) For the reasons set forth below, Lawrence's motion for summary judgment is granted in the sum of $1,195,000 plus pre- and post-judgment interest as to his breach of contract claim but is otherwise denied.

## I. APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and it is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "In reviewing a summary judgment motion, [the Court] must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 242. "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is

presented." *Id.* at 244 (cleaned up). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Id.* Rather, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id.*

## II. Facts

The Court finds that the following facts are undisputed and supported by the evidence and the admissions in the record. *See id.*

In December 2022, Lawrence entered into a Sales and Purchase Agreement ("SPA") with third-party defendant Allyn Brennan, pursuant to which Lawrence agreed to purchase an amount of the cryptocurrency Bitcoin from Brennan in exchange for consideration in the form of another cryptocurrency known as United States Dollar Tether or "USDT." (Dkt. No. 125-1 ("Lawrence 56.1") ¶¶ 3–4, 8, 10.) The SPA required Lawrence to provide collateral USDT to be escrowed as security for the transaction. (*Id.* ¶¶ 11–12.) To accomplish this, Lawrence entered into an Escrow Agreement with Flohr, pursuant to which Lawrence was to transfer USDT equivalent to $1,195,000 to Flohr as the escrow attorney, which Flohr agreed to release to Brennan only if Lawrence received the Bitcoin from Brennan and failed to transfer non-escrowed USDT consideration to Brennan. (*Id.* ¶¶ 13, 17, 19.)

Pursuant to the Escrow Agreement, Lawrence transferred USDT worth $1,195,000 (the "Escrow Sum") to Flohr's digital wallet on December 16, 2022. (*Id.* ¶ 20.) Though Lawrence did not know it at the time he transferred the Escrow Sum, Flohr's digital wallet was administered by third-party defendant New RiverBank LLC. (*Id.* ¶¶ 29, 55–57.) The parties dispute the exact nature of New RiverBank's business, but it is undisputed that New RiverBank does not operate as a bank in the United States (*id.* ¶ 30) and did not hold a NYDFS BitLicense or New York trust charter approval to provide virtual-currency custody in New York (*id.* ¶ 69). Just hours after Lawrence transferred the Escrow Sum to Flohr's digital wallet administered by New RiverBank, the Escrow Sum disappeared from Flohr's digital wallet. (*Id.* ¶ 22.)

Brennan never made any transfer of Bitcoin to Lawrence. (*Id.* ¶ 23.) The Escrow Agreement provided that, in the event of a failure by Brennan to transfer a tranche of Bitcoin to Lawrence, Lawrence would have the option to recall the Escrow Sum from Flohr by making a "Buyer's Claim," after which Flohr would be obligated to return the Escrow Sum to Lawrence within twenty-four hours. (*Id.* ¶¶ 24–25.)

Lawrence made a Buyer's Claim on December 22, 2022, requesting that Flohr release and return the Escrow Sum to Lawrence. (*Id.* ¶ 26.) The same day, Flohr responded to Lawrence as follows:

> As you have been informed, the subject USDT [*i.e.*, the Escrow Sum], without my knowledge, permission, or instruction, was sent by an employee of the bank administering the wallet to another USDT wallet. . . . I am sure you understand that a USDT wallet administered by a bank is not wholly within an escrow attorney's control, as even traditional bank fiat escrow accounts are not wholly within an escrow attorney's control, and any liability here lies with the bank.

(*Id.* ¶ 27.) Flohr did not return the Escrow Sum to Lawrence after Lawrence made the Buyer's Claim and has never done so. (*Id.* ¶ 34.) Some months after Lawrence made his Buyer's claim, Flohr disclosed to Lawrence that New RiverBank was the administrator of Flohr's digital wallet. (*Id.* ¶ 56.)

## III. DISCUSSION

### A. Breach of Contract Claim

Lawrence is entitled to summary judgment on his claim against Flohr for breach of the Escrow Agreement.

Under New York law,[1] there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "To plead these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Piuggi v. Good for You Productions LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (internal quotation marks and citation omitted). "Under New York law, 'if a contract is unambiguous on its face, its proper construction is a question of law' that may be resolved on summary judgment." *LVP Assocs. L.L.C. v. Bank of China, N.Y. Branch*, No. 17-cv-5274, 2017 WL 5514523, at *4 (S.D.N.Y. Nov. 16, 2017) (quoting *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 89 (2d Cir. 2013)).

Here, as to the first two elements, there is no dispute that an agreement existed between Lawrence and Flohr and that Lawrence adequately performed under the Escrow Agreement. (*See* Lawrence 56.1 ¶ 31.)

---

[1] The Escrow Agreement provides that any dispute arising out of the agreement shall be governed by New York law. (*See* Dkt. No. 127-3, Ex. C ("Escrow Agreement") § 7.1.)

As to the third element, the undisputed facts establish that Flohr breached the Escrow Agreement in two ways.

The relevant provisions of the Escrow Agreement are unambiguous on their face. The Escrow Agreement defines Flohr as the "Escrow Attorney" and provides that Flohr "accepts . . . appointment as depository and administrator of the USDT and/or [Bitcoin] to be exchanged as set out in" the Escrow Agreement and states that "the duties of the Escrow Attorney are . . . fiduciary in nature." (Escrow Agreement § 1.1.) The Escrow Agreement provides that "[t]he Escrow Sum will be held in the Escrow Account [defined as Flohr's digital wallet] on the terms of this Escrow Agreement, and no amount may be released from the Escrow Account otherwise than on the terms of this Escrow Agreement." (*Id.* ¶ 2.1.) As noted above, the Escrow Agreement provided that if Brennan failed to deliver a tranche of Bitcoin to Lawrence, Lawrence could make a Buyer's Claim and Flohr was required to release and pay the Escrow Sum to Lawrence within twenty-four hours. (*Id.* §§ 2.2.2, 3.2.) The Escrow Agreement also states that "[t]he Escrow Accounts shall be under the control of the Escrow Attorney." (*Id.* § 4.1.)

*First*, Flohr breached section 3.2 of the Escrow Agreement when he failed to release and pay the Escrow Sum to Lawrence after Lawrence made a Buyer's Claim on December 22, 2022.

It is no defense that Flohr's performance under the Escrow Agreement might have been rendered impossible by the actions of third-party defendant New RiverBank. As an initial matter, Flohr has waived the affirmative defense of impossibility by failing to assert it. *See Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 82 F.4th 161, 170 (2d Cir. 2023) (stating that "[i]mpossibility (also known as 'impracticability') is an affirmative defense under New York law against liability for nonperformance of a contractual obligation."); *Lakah v. UBS AG*, No. 07-cv-2799, 2013 WL 2246955, at *2 (S.D.N.Y. May 22, 2013) ("[A] party that has not asserted an affirmative defense in its answer to a complaint has waived that defense.").

In any event, that defense—whether denominated the defense of "impossibility" or "impracticability"—is unavailable to Flohr on the facts of this case. As discussed below, Flohr breached the Escrow Agreement by permitting New RiverBank to control and administer the Escrow Account. Flohr therefore cannot claim impossibility on the basis of New RiverBank's possible bad acts because Flohr himself is at fault for any ability of New RiverBank to frustrate Flohr's capacity to deliver the Escrow Sum back to Lawrence. *See, e.g.*, *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023) ("The defense [of impossibility] is available to a party whose performance is made impracticable *without the party's fault* by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." (cleaned up and emphasis added)); *see also* 30 Williston on Contracts § 77:1 (4th ed.) (noting that

impracticability "[i]is often invoked due to . . . acts of third parties" but that, "[i]f the adverse event is due to the fault of the obligor, the offending party cannot be heard to cry that performance is impracticable").

*Second*, Flohr breached sections 1.1 and 4.1 of the Escrow Agreement by failing to control the Escrow Account and by permitting New RiverBank to administer the Escrow Account.

Section 4.1 of the Escrow Agreement provides that the Escrow Account "shall be under the control of the Escrow Attorney," who accepted "appointment as depository and administrator" of the Escrow Sum pursuant to section 1.1. It is manifest that, as Lawrence's escrow agent, Flohr had a duty of strict compliance with the terms of the Escrow Agreement. *See George A. Fuller Co. v. Alexander & Reed, Esqs.*, 760 F. Supp. 381, 386 (S.D.N.Y. 1991); *see also Mex. Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-cv-6424, 2023 WL 4348546, at *21 (S.D.N.Y. July 5, 2023); *Farago v. Burke*, 262 N.Y. 229, 233 (1933).

The undisputed facts establish that Flohr did not act as the administrator of the digital wallet specified in the Escrow Agreement and that Flohr did not "control" the Escrow Account because New RiverBank was the administrator of the Escrow Account. *Cf. In re Schneider*, 131 A.D.3d 175, 183 (2d Dep't 2015) (finding that attorney who permitted another person to access escrow account had "abdicated . . . control" over the escrow account). Flohr therefore breached the Escrow Agreement by failing strictly to comply with the requirement that Flohr control the Escrow Account and act as its administrator.

As to the final element of damages, the undisputed facts establish that Lawrence suffered the loss of the Escrow Sum worth $1.195 million due to Flohr's failure to return the Escrow Sum to Lawrence in compliance with the terms of the Escrow Agreement.

**B. Breach of Fiduciary Duty Claim**

Lawrence is not entitled to summary judgment on his breach of fiduciary duty claim. Insofar as his claim turns on Flohr's use of New RiverBank and failure to control the Escrow Account, Lawrence's claim is duplicative of his breach of contract claim. Insofar as his claim turns on Flohr's failure to make certain disclosures to Lawrence, Lawrence attempts to impose supra-contractual duties on Flohr's limited role as escrow agent.

Under New York law, "[a]n 'escrow agent owes the parties to the transaction a fiduciary duty' and therefore has 'a strict obligation to protect the rights of the parties for whom he or she acts as escrowee.'" *Mex. Infrastructure Fin.*, 2023 WL 4348546, at *21 (quoting *Greenapple v. Cap. One, N.A.*, 939 N.Y.S.2d 351, 352 (1st Dep't 2012)).

Nevertheless, "the scope of an escrow agent's fiduciary duty is defined by the scope of its contractual duty under the escrow agreement," *Qube Films Ltd. v. Padell*, No. 13-cv-8405, 2016 WL 881128, at *4 (S.D.N.Y. Mar. 1, 2016), and "courts in this district have explained that the '[p]arties to an escrow agreement cannot impose upon the escrow agent any obligations in addition to its limited duties under the express terms of its contract.'" *Mex. Infrastructure Fin.*, 2023 WL 4348546, at *21 (quoting *Qube Films*, 2016 WL 881128, at *4).

"A breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (cleaned up); *accord Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011); *Senior Health Ins. Co. of Penn. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 523 (S.D.N.Y. 2018).

Lawrence contends that Flohr breached his fiduciary duty to Lawrence by (i) using New RiverBank as the custodian of the Escrow Sum and failing to maintain sole control over the Escrow Account; (ii) failing to disclose Flohr's use of New RiverBank as custodian for the Escrow Sum and the risks attendant to that use; and (iii) failing to disclose Flohr's knowledge of Brennan's prior criminal conviction for financial crimes. (*See* Dkt. No. 126 at 20.)

Lawrence's breach of fiduciary duty claim is duplicative of his breach of contract claim to the extent it is based on Flohr's use of New RiverBank to administer and failure to control the Escrow Account because these actions are the same as those underlying Lawrence's meritorious claim that Flohr breached sections 1.1 and 4.1 of the Escrow Agreement. *See Ellington Credit Fund*, 837 F. Supp. 2d at 193.

Lawrence's breach of fiduciary duty claim also fails to the extent it is based on Flohr's failure to disclose his use of New RiverBank to administer the Escrow Account, the risks attendant to Flohr's use of New RiverBank, or Flohr's knowledge of Brennan's prior criminal conviction. Lawrence attempts to impose a disclosure obligation on Flohr over and above his fiduciary duties as specified in the Escrow Agreement. As set forth above, an escrow agent's fiduciary duties under New York law are established by the escrow agreement, and parties may not attempt to embellish the well-defined role of an escrow agent by supplementing the escrow agent's contractual duties with higher duties drawn from general fiduciary duty caselaw. *See Mex. Infrastructure Fin.*, 2023 WL 4348546, at *21; *Qube Films*, 2016 WL 881128, at *4.[2] For that reason, Lawrence is not

[2] Lawrence cites two cases suggesting a freestanding fiduciary duty to disclose for escrow agents, neither of which is persuasive. In *Bardach v. Chain Bakers, Inc.*, 290 N.Y. 813 (1943), an 83-year-old affirmance

entitled to summary judgment on his breach of fiduciary duty claim based on Flohr's failure to disclose his use of New RiverBank, risks associated with New RiverBank, or Brennan's prior criminal conviction.

### C. Punitive Damages and Attorneys' Fees

The Court denies Lawrence's request for punitive damages and attorneys' fees.

"Punitive damages are not recoverable for an ordinary breach of contract" and, to recover punitive damages on a breach of contract claim, a plaintiff must show that the defendant engaged in conduct "aimed at the public generally" so that punitive damages are necessary to "vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994). "Moreover, the misconduct must evince a 'high degree of moral turpitude [demonstrating] such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 262 (S.D.N.Y. 2005) (alteration in original) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)); *accord New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 315–16 (1995). "These are known, respectively, as the 'public wrong' and 'extraordinary egregiousness' requirements." *Topps*, 380 F. Supp. 2d at 262.

Lawrence has not put forward undisputed facts demonstrating that he is entitled to punitive damages on his breach of contract claim as a matter of law. "[T]he question of whether to award punitive damages is 'an intensely factual one . . . .'" *Senior Health*, 345 F. Supp. 3d at 533 (quoting *George v. Ford Motor Co.*, No. 03-cv-7643, 2007 WL 2398806, at *5 (S.D.N.Y. Aug. 17, 2007)). First, this dispute is a purely private one that is not "aimed at the public generally." Moreover, the undisputed evidentiary record at this juncture does not establish that Flohr was actively engaged in a scheme to defraud with Brennan. Although Lawrence may be able later to establish facts demonstrating that he is entitled to punitive damages, the Court is unable to make that finding on this record.

Similarly, Lawrence has not demonstrated that he is entitled to recover attorneys' fees. Pursuant to the American Rule, "[o]ur legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011); *accord Sage Sys., Inc. v.* Liss, 39

---

without an opinion from the New York Court of Appeals of an Appellate Division decision, 265 A.D. 24 (1st Dep't 1942), the escrow agent admitted violating the escrow agreement in several ways and withholding critical information from the purchaser of a business. The undisputed facts here are a far cry from the escrow agent's admitted violations in *Bardach*. Lawrence's second case, *Director Door Corp. v. Marchese & Sallah, P.C.*, 127 A.D.2d 735 (2d Dep't 1987), relies exclusively on *Bardach* and was also an action where the facts were that the defendant attorney was a knowing participant in fraud.

N.Y.3d 27, 30–31 (2022) (no fee shifting unless "authorized by agreement between the parties, statute or court rule" (citation omitted)); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Lawrence has put forward no justification for awarding him attorneys' fees apart from the assertion that he "will not be 'made whole'" without an award of attorneys' fees. (*See* Dkt. No. 126 at 20.) This is insufficient, and Lawrence's request for attorneys' fees is denied.

### D. Interest

New York law provides for prejudgment interest in breach of contract cases at the statutory rate of nine percent per year, dating from the accrual of the cause of action. *See* N.Y. C.P.L.R. §§ 5001, 5004. Here, Lawrence's breach of contract claim accrued on December 23, 2022, when Flohr failed to release and pay to Lawrence the Escrow Sum within twenty-four hours of Lawrence's Buyer's Claim. Accordingly, Lawrence is entitled to prejudgment interest of nine percent per year from December 23, 2022, until the Clerk of Court enters judgment in this action.

Awards of post-judgment interest under 28 U.S.C. § 1961 are mandatory, *see Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and Lawrence is entitled to post-judgment interest from the date of the entry of judgment in this action until the judgment is satisfied.

## IV. Conclusion

Lawrence's motion for summary judgment is granted in the sum of $1,195,000 plus pre- and post-judgment interest on his claim against Flohr for breach of contract and is otherwise denied.

The Clerk of Court shall mail a copy of this Opinion and Order to Flohr at the following address: Thomas Flohr, 424 Highridge Ct., Peekskill, New York, NY 10566.

Dated: New York, New York
August 3, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.